UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMPIRE CITY CAPITAL CORP., RICHARD KESSLER and DEBORAH C. KESSLER, | |
| Plaintiffs, | Case No. 10-CV-2601 (KMK) |
| -v- | OPINION AND ORDER |
| CITIBANK, N.A., | |
| Defendant. | |

Appearances:

Mitchell J. Baker, Esq.
Gary L. Leshko, Esq.
Baker, Leshko, Saline & Blosser, LLP
White Plains, NY
*Counsel for Plaintiffs*

Ronald M. Neumann, Esq.
Zeichner Ellman & Krause LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

Plaintiffs Empire City Capital Corp. ("Empire City"), Richard Kessler, and Deborah C. Kessler ("the Kesslers"), initiated this action, alleging that Defendant Citibank, N.A. ("Citibank") is liable to the Plaintiffs on theories of common law conversion (Compl. ¶ 21), and breach of its duty of care, (*id.* ¶ 25). On August 12, 2010, Defendant filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure. 12(b)(6). For the reasons stated herein, the motion is granted.

I.  Background

Plaintiffs are a Connecticut corporation and two individuals, both Connecticut citizens and residents. (Compl. ¶ 1-3.) Plaintiffs allege that Anthony Willsea (now deceased), an

employee of Plaintiffs and a Citibank account holder, stole approximately $1,000,000.00 from Plaintiffs by forging Plaintiff Richard Kessler's signature on a number of checks. (*Id.* ¶¶ 11-16; Mem. of Law of Pls. in Opp'n to the Mot. to Dismiss the Compl. ("Pls.' Mem.") 4.) Most of these forged checks were made payable to American Express or Citibank. (Compl. ¶¶ 12, 14.) The Complaint alleges that "[s]ome of the checks . . . made payable to Citibank were deposited in an account [that] Anthony Willsea maintained at Citibank." (*Id.* ¶ 15.)

Plaintiffs claim Citibank is liable to them on two theories. First, Plaintiffs contend that Citibank is liable for common law conversion because it accepted these forged checks and credited Willsea's account, presenting the checks to Plaintiffs' bank (Bank of New York Mellon or "BNY") and causing Plaintiffs' bank to debit Plaintiffs' account. (*Id.* ¶¶ 9-10, 17-21.) Second, according to Plaintiffs, Citibank was negligent because it "owed [P]laintiffs a duty to properly review, analyze and process checks given to it to deposit," and breached this duty presumably by accepting the forgeries. (*Id.* ¶ 23.)

Plaintiffs filed their Complaint on March 23, 2010. (Dkt. No. 1.) Defendant's motion to dismiss was filed September 29, 2010. (Dkt. No. 11.) The Court held oral argument on August 3, 2011.

## II.  Discussion

A.  Standard of Review

    1.  Rule 12(b)(6)

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) ("We review the district court's grant of a Rule

12(b)(6) motion to dismiss de novo, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.").

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-25 (2d Cir. 2008) (holding that district court properly took judicial notice of and considered media reports, state court complaints, and regulatory filings on a motion to dismiss); *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) ("The court may also consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint," including "public records."). In the motion to dismiss context, however, the court should generally take judicial notice "to determine what statements [the documents] contain[] . . . not for the truth of the matters asserted." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citations, and internal quotation marks omitted). Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. A plaintiff must allege "enough facts to state a claim to relief that is plausible on its

3

face." *Id.* at 570. If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

      2.  State Law Claims

In the absence of a definitive ruling from the State's highest court, this Court's task in deciding issues of State law is to "predict how the state's highest court would resolve" those issues. *Runner v. N.Y. Stock Exch., Inc.*, 568 F.3d 383, 386 (2d Cir. 2009) (quoting *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005)). The Court "construe[s] and appl[ies] state law as it believes the state's highest court would," and will not "adopt innovative theories that may distort established state law." *Liddle & Robinson, LLP v. Garrett*, 720 F. Supp. 2d 417, 424 (S.D.N.Y. 2010) (alterations and internal quotation marks omitted).

The Court will make its prediction based on a number of factors, first giving "proper regard to relevant rulings of the state's lower courts." *Runner*, 568 F.3d at 386 (quoting *Carpenter*, 411 F.3d at 329). These lower State court decisions may be "helpful indicators of how the [state's highest court] would decide" an issue, but this Court is "not strictly bound" by them if there is "persuasive data" in decisions of the State's highest court that would suggest that court would "decide otherwise." *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007) (internal quotation marks omitted); *see also New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 210 (2d Cir. 2006) ("[T]he judgment of an intermediate appellate state court 'is a

datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" (quoting *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967))).  The Court will also consider the "decisions of federal courts construing state law, in particular the circuit court within whose jurisdiction the state at issue is located." *In re West Pan, Inc.*, 372 B.R. 112, 121 (S.D.N.Y. 2007).  Finally, the Court may consider "[o]ther persuasive data[,] includ[ing] the state's supreme court dicta, restatements of law, law review commentaries, and the majority rule among other states." *Kline v. E.I. DuPont de Nemours & Co.*, 15 F. Supp. 2d 299, 303 (W.D.N.Y. 1998) (quoting *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997)); *see also Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011) (noting that, in predicting how a State's highest court would decide an open question, it is permissible to "seek guidance" from, among other things, "appellate decisions in other states with similar legal principles" and "the general weight and trend of authority in the relevant area of law." (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007)).

B.  Analysis

      Citibank's principal argument is that under the Uniform Commercial Code ("U.C.C."), Plaintiffs have no cause of action against a depositary bank for conversion, and that the U.C.C.'s scheme of loss allocation displaces any common law conversion or negligence claim Plaintiffs could assert.

      1.  Applicable Law

      In diversity cases, federal courts apply the choice-of-law rules of the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003).  As the Second Circuit has explained:

> The New York Court of Appeals has held that "the relevant analytical approach to choice of law in tort actions in New York" is the "interest analysis." The New York Court of Appeals has defined "interest analysis" as requiring that "the law of the jurisdiction having the greatest interest in the litigation will be applied and the only facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." "Under this formulation, significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort."

*GlobalNet Fin.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006) (alterations and citations omitted) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679, 684 (N.Y. 1985)).

In this case, which involves tort claims for conversion and negligence, the only significant contacts referenced in the Complaint are with Connecticut. The individual Plaintiffs, the Kesslers, are citizens and residents of Connecticut. (Compl. ¶¶ 2-3.) Empire City is a Connecticut corporation with its principle place of business there. (*Id.* ¶ 1.) While Citibank does business in Westchester County, New York, the Complaint does not allege facts suggesting it is a New York domiciliary. (*Id.* ¶¶ 4-5.) As for the "locus" of the alleged torts, the Complaint alleges only that Willsea stole from bank accounts maintained by Plaintiffs (all Connecticut residents) at BNY. (*Id.* ¶¶ 9-11, 13.)

Additionally, in its reply papers, Citibank, while not explicitly conceding that Connecticut law should apply, applies Connecticut law. Plaintiffs also do not advance any other possibility as to the applicable law, and acknowledge that their Complaint does not state a claim under any state's law except Connecticut's. (Pls.' Mem. 7 n.3 ("Plaintiffs concede that if New York law were to apply to the instant fact pattern, the complaint does not allege a viable cause of action. However, as New York law does not apply herein, to the extent Citibank discusses the law of New York or of any State other than Connecticut, such analysis is not applicable.").) Under these circumstances, the Court will assume that Connecticut law applies here. *Cf. Arch*

*Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (noting that the parties' assumption that a particular state's substantive law applies is "implied consent" that is "sufficient to establish the applicable choice of law" (internal quotation marks omitted)).

That the U.C.C. might be relevant to the substantive issues in this case does not, as Citibank argues, change the analysis. (Reply Mem. of Law in Supp. of Citibank's Mot. to Dismiss the Compl. ("Reply Mem.") 1 ("The Uniform Commercial Code provides the law applicable to check issues in all 50 states; all other laws are preempted by the UCC.").) Even though nearly every state may have adopted the U.C.C. uniformly, the Code's application varies across states, so the Court must still perform a choice of law analysis at least where, as here, the applicable law might differ across state lines. *See Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 605 (S.D.N.Y. 1982) ("Though the Commercial Code is uniform throughout forty-nine states, each jurisdiction has developed its own interpretation of the Code, thus leading to potentially conflicting legal authorities." (internal quotation marks omitted)); *see also Orecchio v. Conn. River Bank, N.A.*, No. 08-CV-164, 2009 WL 2160583, at *1 (D. Vt. July 14, 2009) (performing choice of law analysis in check forging case governed by the U.C.C.); *cf. Shema Kolainu-Hear Our Voices v. Providersoft, LLC*, No. 09-CV-3140, 2010 WL 2075921, at *3 n.1 (E.D.N.Y. May 21, 2010) (noting that choice of law analysis is of "little import" where both states had adopted the U.C.C.'s contract provisions); *Fercus, S.R.L. v. Palazzo*, No. 98-CV-7728, 2000 WL 1118925, at *2 n.5 (S.D.N.Y. Aug. 8, 2000) (declining to perform choice of law analysis where both states had adopted the identical applicable U.C.C. provision).

Moreover, assuming the U.C.C. is applicable, it too requires the application of Connecticut law. U.C.C. § 4-102(b) provides that

> [t]he liability of a bank for action or non-action with respect to an item handled by it for purposes of presentment, payment, or collection is governed by the law of the place where the bank is located. In the case of action or non-action by or at

7

> a branch or separate office of a bank, its liability is governed by the law of the place where the branch or separate office is located.

*See* Conn. Gen. Stat. § 42a-4-102(b); N.Y. U.C.C. Law § 4-102.

Here, the Complaint is silent as to where the allegedly stolen checks were deposited, but Plaintiffs represented in their motion papers and at oral argument that "upon information and belief and based on independent investigation, Mr. Willsea deposited the checks in [a] Citibank branch located [in] . . . Greenwich, Connecticut." (Pls.' Mem. 6-7.)[1] This is further support for the application of Connecticut law to this case. *See Orecchio*, 2009 WL 2160583, at *1; *Bank of Nova Scotia v. HSBC Bank USA*, No. 04-CV-1662, 2005 WL 1423362, at *3 (S.D.N.Y. June 16, 2005). Thus, even if Citibank is correct that this case is governed by the U.C.C. — an argument Plaintiffs contest — it is Connecticut's treatment of the U.C.C. that will govern the U.C.C.'s application here.

    2.  Conversion

While Plaintiffs are not suing under the U.C.C., Defendant claims that the U.C.C. preempts the common law claims Plaintiffs have brought.

The U.C.C. provides a way to allocate liability among the drawee bank (in this case, BNY), the depositary bank (here, Citibank), and the drawers (Plaintiffs) in the event of a forged check claim. Under the U.C.C., a drawee bank is ordinarily strictly liable to a drawer for paying checks containing forged drawers' signatures. *See* U.C.C. § 4-401 (providing that a bank "may charge against the account of a customer an item that is properly payable . . . ."); *id.* cmt. 1 ("An item containing a forged drawer's signature or forged indorsement is not properly payable."); *J.*

---

[1] At oral argument, Defendant asserted that some of the checks were deposited in New York, but the Complaint makes no such allegation. In fact, based on Plaintiffs' allegations, it is entirely unclear why there is venue in this District at all.

*Walter Thompson, U.S.A., Inc. v. First BankAmericano*, 518 F.3d 128, 131 n.2, 132 (2d Cir. 2008) ("Generally, liability for a check with a *forged signature* lies with the drawee/payor bank. . . . After the drawee/payor bank discovers that an altered check has been charged against the drawer's account, the drawer is entitled to have its account credited for the amount of the check." (emphasis in original)).  The drawee bank's liability may be reduced or eliminated "where a drawer's own negligence contributed to the alteration."  *J. Walter Thompson*, 518 F.3d at 132.  U.C.C. § 3-406(b) "allocates liability for the loss associated with an altered check according to the extent to which the failure of each [the drawer and the drawee bank] to exercise ordinary care contributed to the loss."  *Id.* (internal quotation marks omitted).  This comparative negligence scheme reflects "the intention of the drafters of the U.C.C. to require the drawer to seek recourse from his own drawee bank" in situations involving signature forgery.  *Bank Polska Kasa Opieki, S.A. v. Pamrapo Sav. Bank, S.L.A.*, 909 F. Supp. 948, 954 (D.N.J. 1995).

Connecticut has adopted the applicable U.C.C. provisions.  *See* Conn. Gen. Stat. §§ 42a-3-406; 42a-4-401.  The official commentary to the U.C.C., also incorporated into Connecticut law, explains that these provisions could be applicable to a case like this one involving forgery of an employer's signature by an employee.[2]  Indeed, as Citibank points out, when this motion

---

[2] *See* Conn. Gen. Stat. § 42a-3-406 cmt. 3 (explaining that the following example, among others, can be the basis of a claim by a drawee bank that it should not be liable to a drawer):

> Employer signs checks drawn on Employer's account by use of a rubber stamp of Employer's signature.  Employer keeps the rubber stamp along with Employer's personalized blank check forms in an unlocked desk drawer.  An unauthorized person fraudulently uses the check forms to write checks on Employer's account.  The checks are signed by use of the rubber stamp.  If Employer demands that Employer's account in the drawee bank be recredited because the forged check was not properly payable, the drawee bank may defend by asserting that Employer is precluded from asserting the forgery.  The trier of fact could find that Employer failed to exercise ordinary care to safeguard the rubber stamp and the check forms and that the failure substantially contributed to the forgery of Employer's signature by the unauthorized use of the rubber stamp.

9

was filed "[t]here [was] already a case pending before this very Court between the drawer and the drawee bank BNY. . . . That is where the issue over the liability for the checks forged by plaintiffs' deceased employee should be examined and resolved."  (Citibank's Mem. of Law in Supp. of Its Mot. to Dismiss the Compl. ("Citibank Mem.") 17.)[3]

> Connecticut has also adopted U.C.C. § 3-420, which provides in relevant part:
>
> (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. *An action for conversion of an instrument may not be brought by* (i) *the issuer or acceptor of the instrument* or (ii) a payee or endorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee.

Conn. Gen. Stat.§ 42a-3-420(a) (adopting U.C.C. § 3-420(a)) (emphasis added).  Citibank relies on the highlighted text to argue that the U.C.C. "explicitly bars an action by the drawer for conversion."  (Citibank Mem. 5.)

The Parties do not cite, and the Court has not found, any Connecticut appellate case applying § 42a-3-420(a) to similar facts.  It appears there is a split at the Superior Court level in Connecticut as to whether this provision bars common law conversion claims by drawers against depository banks.  In *Stamford Athletic Club v. Union Trust Co.*, No. 94-CV-136922, 1997 WL 155376 (Conn. Super. Ct. Mar. 25, 1997), the plaintiff brought, among other claims, a claim for conversion against a depositary bank at which the plaintiff's bookkeeper had deposited forged or altered checks.  *Stamford Athletic Club*, 1997 WL 155376, at *1.  The court granted the depositary bank's motion to strike the conversion claim because pursuant to § 42a-3-420, "the Stamford Athletic, as the drawer of the checks, may not bring an action in conversion against the

---

[3] This case, No. 10-CV-2599(VB), has reportedly been voluntarily dismissed without prejudice.

Bank of Darien, as the depository bank . . ." *Id.* at *2. In *Heche v. Chase Manhattan Bank*, No. 00-CV-0070970S, 2001 WL 893808 (Conn. Super. Ct. July 10, 2001), however, another case involving a forged signature brought by a drawer against a depositary bank, the court permitted the plaintiff's cause of action for common law conversion, while acknowledging that this decision was at odds with the language of Conn. Gen. Stat. § 42a-3-420. *Heche*, 2001 WL 893808, at *4.[4]

*Heche* has been widely criticized and is regarded as the minority view. *See* 6B Ronald A. Anderson, Anderson on the Uniform Commercial Code § 3-420:14 n.3 (Lary Lawrence ed., Thomson West rev. 3d. ed., 2011) ("The court, in a very questionable opinion, held that the drawer had a common law action for conversion since the depositary bank was in a unique position to prevent the loss."); Barkley Clark & Barbara Clark, The Law of Bank Deposits, Collections and Credit Cards ¶ 12.05(1)(B) (A.S. Pratt & Sons, 2011 ed.) (noting that *Heche*'s result was inconsistent with the Code's language and with the authority on which it relied, and that "under UCC § 3-420(a), the purported drawer should not have standing to bring a conversion claim — under statutory or common law"); A. Brooke Overby, *Check Fraud in the Courts after the Revisions to U.C.C. Articles 3 and 4*, 57 Ala. L. Rev. 351, 394 (2005) ("[*Heche*] provides an example of a case in which the court did allow a common law action for conversion to be brought by the drawer against a depositary bank, *contrary to the views of a substantial*

---

[4] *Heche* was relied on by *Roger Kaye, M.D., P.C. v. T.D. Banknorth*, No. 08-CV-5007268S, 2009 WL 1532513 (Conn. Super. Ct. May 6, 2009), in which the Superior Court denied a motion to strike a conversion claim brought by a plaintiff alleging fraudulent *endorsement* of checks by an employee. *Id.* at *2. The defendant bank was the depository bank. *Id.* at *1. *Roger Kaye* concluded that § 42a-3-420(a) did not displace the common law conversion claim, citing *Heche* and other unpublished Superior Court cases applying an older version of § 42a-3-420(a). *Id.* at *3.

*number of other courts.*" (emphasis added)). *Heche* is also contrary to the law in most other states.[5]

The Court concludes that, if it reached the issue, the Connecticut Supreme Court would follow the vast majority of courts in other jurisdictions in interpreting U.C.C. § 3-420(a) to bar a conversion claim against a depositary bank brought by a plaintiff whose signature was forged on the instrument. First, the statute is unambiguous: "An action for conversion of an instrument may not be brought by [] the issuer . . . of the instrument." Conn. Gen. Stat. § 42a-3-420(a).[6]

---

[5] *See, e.g.*, *Conder v. Union Planters Bank, N.A.*, 384 F.3d 397, 399 (7th Cir. 2004) (applying Indiana law) ("The Uniform Commercial Code, as revised in 1990 to wipe out some earlier cases . . . is explicit that a drawer . . . cannot sue the depositary bank . . . for conversion." (citations omitted)); *Fine v. Sovereign Bank*, No. 06-CV-11450, 2010 WL 3001194, at *2 (D. Mass. July 28, 2010) (noting that the Massachusetts version of U.C.C. § 3-420 "seems to expressly prohibit a drawer from ever raising a claim of conversion," but that drawer might still have cause of action against depositary bank on a fiduciary duty theory under U.C.C. § 3-307); *First Realty Prop. Mgmt., Ltd. v. McDonald & Co. Secs., Inc.*, No. 07-CV-2226, 2008 WL 80062, at *4 (N.D. Ohio Jan. 4, 2008) (collecting Ohio cases holding drawer's common law claim for conversion against depositary bank preempted by Ohio U.C.C.); *Willier, Inc. v. Hurt*, No. 06-CV-547, 2007 WL 4613033, at *6 (S.D. W. Va. Dec. 31, 2007) ("It is well-recognized . . . that an action for conversion may not be brought by the drawer of a check. This bar is expressly recognized in U.C.C. § 3-420(a) . . . ." (footnote omitted)); *Cont'l Cas. Co. v. Compass Bank*, No. 04-CV-766, 2006 WL 566900, at *13 (S.D. Ala. Mar. 6, 2006) ("A conversion claim by an issuer against a depositary bank has been displaced by the Alabama Commercial Code and under the code the issuer (drawer) is explicitly excluded from bringing such a conversion claim." (footnote omitted) (citing Ala. Code § 7-3-420)); *Farmers Bank of Md. v. Chicago Title Ins. Co.*, 877 A.2d 1145, 1158 (Md. Ct. Spec. App. 2005) ("[T]he legislature's adoption of UCC section 3-420 abolished a drawer's common law action for conversion . . . ."); *Pamar Enters., Inc. v. Huntington Banks of Mich.*, 580 N.W.2d 11, 15-16 & n.5 (Mich. Ct. App. 1998) (drawer of instrument may not bring conversion action against either depositary or drawee bank for conversion, but depositary could still be liable on warranty theory); *Halifax Corp. v. Wachovia Bank*, 604 S.E.2d 403, 411 (Va. 2004) (holding that Virginia's version of U.C.C. § 3-420(a) requires dismissal "when an instrument with a forged signature is the subject of a claim for conversion brought by the issuer thereof," and rejecting the distinction (relied on in *Heche*) between preclusion of statutory and common law conversion claims).

[6] Connecticut law defines an "issuer" as "a maker or drawer of an instrument." Conn. Gen. Stat. § 42a-3-105(c). In turn, both "drawer" and "maker" are defined as "a person who signs or is identified in" a draft or note, respectively, "as a person undertaking to pay." *Id.* § 42a-3-103(a)(3)–(4). The Complaint alleges that Citibank accepted the forged checks and presented them to "plaintiffs' bank, which in turn debited the subject accounts of the plaintiffs in

12

The Connecticut Supreme Court would likely stop there. *See Stiffler v. Cont'l Ins. Co.*, 950 A.2d 1270, 1274-75 (Conn. 2008) ("If, after examining [a statute's] text and considering [its] relationship [to other statutes], the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (quoting *Considine v. Waterbury*, 905 A.2d 70, 77 (Conn. 2006)) (citing Conn. Gen. Stat. § 1-2z)).

Second, § 42a-3-420 incorporates the official comments to the U.C.C., which state that a drawer should have no conversion claim under these circumstances:

> Under former Article 3, the cases were divided on the issue of whether the drawer of a check with a forged indorsement can assert rights against a depositary bank that took the check. The last sentence of Section 3-420(a) resolves the conflict by following the rule stated in *Stone & Webster Engineering Corp. v. First National Bank & Trust Co.*, 184 N.E.2d 358 (Mass. 1962). There is no reason why a drawer should have an action in conversion. The check represents an obligation of the drawer rather than property of the drawer. The drawer has an adequate remedy against the payor bank for recredit of the drawer's account for unauthorized payment of the check.

Conn. Gen. Stat. § 42a-3-420 cmt.1. Although this comment refers specifically to forged endorsements, it has been cited in cases involving forged signatures. *See Borg v. J.P. Morgan Chase & Co.*, No. 04-2874 M1/V, 2006 WL 2052856, at *7 (W.D. Tenn. July 21, 2006), *aff'd sub nom. Borg v. Chase Manhattan Bank USA, N.A.*, 247 F. App'x 627, 638 (6th Cir. 2007) (holding that district court's conclusion "was in accord with other courts that have considered the application of the UCC to claims of conversion by victims of check forgery").

Finally, Connecticut law does address the more general issue of displacement of common law (or other statutory) causes of action by the U.C.C. Conn. Gen. Stat. § 42a-1-103 provides:

---

the amounts of the checks presented." (Compl. ¶ 20.) The only inference that may be drawn from that allegation is that Plaintiffs were "identified" as "person[s] undertaking to pay" on the forged instruments; therefore, Plaintiffs were the "issuers" within the meaning of § 42a-3-420(a).

13

> Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions.

Conn. Gen. Stat. § 42a-1-103(b). The Connecticut Supreme Court has held that this provision "preserves a broad range of common-law actions . . . unless such actions are 'displaced by the particular provisions of this title.'" *Flagg Energy Dev. Corp. v. Gen. Motors Corp.*, 709 A.2d 1075, 1088 (Conn. 1998) (quoting Conn. Gen. Stat. § 42a-1-103(b)). In *Flagg Energy*, the court held that Conn. Gen. Stat. § 42a-2-721 barred certain actions for fraud and misrepresentation because the statute's text and the official commentary made clear that such claims would be inconsistent with the remedies provided for in the U.C.C. *Id.* at 1088-89.

This Court believes that the Connecticut Supreme Court, following its methodology in *Flagg Energy*, would adopt the interpretation of U.C.C. § 4-320 held in the vast majority of states, and would hold that § 42a-3-420's plain text, coupled with the explicit language in the commentary, bars Plaintiffs' conversion claim. Citibank's motion to dismiss this claim must therefore be granted.[7]

---

[7] Citibank argues that Plaintiffs do not state a claim for conversion under Connecticut common law in any event. (Citibank Mem. 14-16.) The Court need not reach this argument. Citibank also cites the U.C.C.'s "final payment rule," under which, as relevant here, a drawee that pays or accepts a check may recover against the person to whom or for whose benefit payment was made if, among other things, the drawer's signature is authorized. The drawee loses this remedy if the defendant can assert a defense that he took the check in good faith for value or in good faith changed position in reliance on the payment. *See* U.C.C. § 3-418; Conn. Gen. Stat. § 42a-3-418(a), (c); *id.* cmt. 1. Citibank argues that the rule means that in this case, where Plaintiffs' signature was *not* authorized, the *drawee* (BNY) has no remedy, and allowing the *drawers* (Plaintiffs) to bring conversion claims would "thwart" the purpose of the final payment rule. (Citibank Mem. 9-11.) It is not clear whether Citibank only thinks the final payment rule operates in tandem with U.C.C. § 420(a), or whether its argument is that the rule is an independent bar to Plaintiffs' claim.

The only reported Connecticut case applying the final payment rule that the Court could find is *Fred Brunoli & Sons, Inc. v. United Bank & Trust Co.*, No. 89-CV-368494 S, 1991 WL 162187 (Conn. Super. Ct. Aug. 15, 1991), which applied an older version of § 42a-3-418. In

3.  Negligence

"While the law in Connecticut is unsettled as to the UCC's effect in relation to claims of negligence, a majority of the Superior Court decisions have held that the UCC does not displace common-law negligence claims . . ." *Roger Kaye, M.D., P.C. v. T.D. Banknorth*, No. 08-CV-5007268S, 2009 WL 1532513, at *2 (Conn. Super. Ct. May 6, 2009); *see also Leaksealers, Inc. v. Conn. Nat'l Bank*, No. 92-CV-517952, 1995 WL 384611, at *5 (Conn. Super. Ct. June 20, 1995) ("[T]he U.C.C. provisions for fraud allocation do not displace the plaintiff's common law claims for negligence.  Therefore, the plaintiff is not precluded from bringing a common law cause of action for negligence against the defendant."); *cf. Sheiman v. Lafayette Bank & Trust Co.*, 492 A.2d 219, 222 (Conn. Ct. App. 1985) ("The UCC does not displace the common law of tort as it affects parties in their commercial dealings except insofar as reliance on the common law would thwart the purposes of the Code." (alteration and internal quotation mark omitted)).

The Connecticut Supreme Court has defined negligence as covering "the failure to exercise reasonable or ordinary care." *Perley v. Glastonbury Bank & Trust Co.*, 368 A.2d 149, 153 (Conn. 1976) (quoting *Fid. & Cas. Co. v. Constitution Nat'l Bank*, 356 A.2d 117, 121 (Conn. 1975)) (internal quotation marks omitted).  As that court has explained, "[b]y 'reasonable care' in cases involving a question of negligence we mean the care which the ordinary prudent

---

*Fred Brunoli*, an employee of the plaintiff forged signatures on checks, with the payee's name left blank, and deposited the checks at the depositary bank. *Id.* at *1.  The Court noted that U.C.C. § 418 was a codification of the common law rule that "a drawee bank who accepts or pays an instrument on which the signature of the drawer is forged is bound on his payment and cannot recover back his payment." *Id.*  The court did not address whether the final payment rule extended to bar claims by *drawers* as well as the *drawee* bank.  Instead, the court denied summary judgment because the facts were such that the depositary bank might have been on notice of the forgery, thus removing the "protection of the final payment rule." *Id.* at *2.  Even assuming *Fred Brunoli* is indicative of how the Connecticut Supreme Court would apply the current version of § 42a-3-418, it is not clear (and the Parties do not address) whether the facts alleged in the Complaint, taken as true, should similarly have put Citibank on notice of Willsea's fraud.

15

person under the circumstances would exercise." *Constitution Nat'l Bank*, 356 A.2d at 121 (internal quotation marks omitted). Further, at common law, "[n]egligence cannot be predicated upon the failure to perform an act which the actor was under no duty or obligation to perform." *Brule v. Nerac, Inc.*, 13 A.3d 723, 729 (Conn. App. Ct. 2011) (alteration in original) (quoting *Sheiman*, 492 A.2d at 222).

"[T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case . . . The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." *Jones v. Givens & Givens Enters., LLC*, No. 10-CV-6008054S, 2011 WL 3199338, at *3 (Conn. Super. Ct. June 27, 2011) (alteration in original) (quoting *Mendillo v. Bd. of Educ.*, 717 A.2d 1177, 1190 (Conn. 1998)). "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand[;] . . . [i]f a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." *Maffucci v. Royal Park Ltd. P'ship*, 707 A.2d 15, 24 (Conn. 1998) (citations omitted).

Here, Citibank did not owe a duty of care to Plaintiffs. "Although the Supreme Court of Connecticut has not specifically addressed the issue, the vast majority of [Connecticut] courts have held that banks are not liable to third parties at common law *because they do not owe a duty of care to non-customers*." *VIP Mortg. Corp. v. Bank of Am., N.A.*, 769 F. Supp. 2d 20, 26 (D. Mass. 2011) (emphasis in original) (citing *Lester Constr., LLC v. People's United Bank*, No. 09-

CV-5024042S, 2009 WL 5698131, at *4 (Conn. Super. Ct. Dec. 18, 2009) ("A bank's duty to act with reasonable care in its transactions with customers arises out of the bank's contract with the customer."); and *Cammarota v. Cammarota*, No. 06-CV-5002935S, 2007 WL 2743429, at *2 (Conn. Super. Ct. Sept. 6, 2007) ("In the context of negligence claims against banks, a bank owes a duty of ordinary care to its customers[, defined as] person[s] having an account with a bank or for whom a bank has agreed to collect items . . . ." (citations and internal quotation marks omitted))).

This is in accord with "[the] almost universal rule that banks do not owe a common law duty of care to third-party customers." *VIP*, 769 F. Supp. 2d at 27; *accord Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) ("As a general matter [in New York], '[b]anks do not owe non-customers a duty to protect them from the intentional torts of their customers.'" (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 830 (S.D.N.Y. 2005))); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 227 (4th Cir. 2002) ("We are persuaded by the reasoning articulated in the numerous cases holding that a bank does not owe noncustomers a duty of care . . . We have no doubt that the North Carolina Supreme Court would reach a similar conclusion . . . .") (collecting cases from many jurisdictions); *Sollberger v. Wachovia Sec., LLC*, No. 09-CV-766, 2010 WL 2674456, at *11 (C.D. Cal. June 30, 2010) ("Absent extraordinary and specific facts, banks do not owe a duty of care to a noncustomer in their financial transactions." (internal quotation marks and citations omitted)); *Tzaras v. Evergreen Int'l Spot Trading, Inc.*, No. 01-CV-10726, 2003 WL 470611, at *6 (S.D.N.Y. Feb. 25, 2003) ("The general rule is that a bank does not owe a duty to a non-customer third-party." (internal quotation marks omitted)); *Renner v. Chase Manhattan Bank*, No. 98-CV-926, 1999 WL 47239, at *13 (S.D.N.Y. Feb. 3, 1999) ("[I]t is well settled that a bank owes no such duty [of care] to a

17

non-customer third-party."), *abrogated on other grounds by MLSMK Inv. Co. v. JP Morgan Chase & Co.*, No. 10-3040-CV, 2011 WL 2640579, at *7 (2d Cir. July 7, 2011).

Reading the allegations in the light most favorable to Plaintiffs, sufficient facts have not been alleged to give rise to a cause of action for common law negligence. Plaintiffs had an account with BNY, the drawee bank, not Citibank, and they otherwise had no direct association with Citibank. Thus, Citibank did not fail to perform any act it was "under [a] duty or obligation to perform." *Sheiman*, 492 A.2d at 222 (holding that, where third party presented check payable to plaintiffs' decedent to defendant bank and bank issued certificates of deposit in favor of third party, bank owed no duty to plaintiffs, intestate successors of the deceased payee, and was thus not liable in negligence). Furthermore, "[t]he law places the risk of loss from forged endorsements on the *drawee* bank unless it can affirmatively prove the drawer's negligence and its own due care. Such a legal presumption accords with the practical realities of commercial banking transactions since the banks are in a better position than private parties such as the [plaintiffs] to secure means of insurance against losses by forgeries." *Perley*, 368 A.2d at 155 (emphasis added).

Even if Plaintiffs had alleged a legal duty, their Complaint is too spare to support a plausible negligence claim. As previously noted, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[B]are assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a formulaic recitation of the elements [of a claim]. . . . As such, the allegations are conclusory and not entitled to be assumed true." *Iqbal*, 129 S. Ct. at 1951 (citations and internal quotation marks omitted). Here, the Complaint states only that "Citibank owed plaintiffs a duty to properly review, analyze and process checks given to it to deposit" (Compl. ¶ 23), and "Citibank breach such obligation to the damage of the plantiffs [sic]," (*id.* ¶ 24). There are no factual allegations detailing what the basis

of Citibank's duty was or how it was breached. Thus, Plaintiffs' Complaint fails to state a negligence claim against Citibank.

### III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is granted. (Dkt. No. 11.) The Clerk of the Court is respectfully directed to terminate the motion and close this case.

SO ORDERED.

DATED:  White Plains, New York
        September 27, 2011

                                                                    _____
                                                                    KENNETH M. KARAS
                                                                    UNITED STATES DISTRICT JUDGE

Service List:

Mitchell J. Baker, Esq.
Gary L. Leshko, Esq.
Baker, Leshko, Saline & Blosser, LLP
One North Lexington Avenue
White Plains, NY 10601-1712
Phone: (914) 681-9500
Fax: (914) 681-9505
Email: mbaker@bakerleshko.com
gleshko@bakerleshko.com
*Counsel for Plaintiffs*

Ronald M. Neumann, Esq.
Mark Zeichner, Esq.
Zeichner Ellman & Krause LLP
575 Lexington Avenue
New York, NY 10022
Phone: (212) 223-0400
Fax: (212) 753-0396
Email: rneumann@zeklaw.com
mzeichner@zeklaw.com
*Counsel for Defendant*